UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RODNEY MANUEL ANDERSON,

Petitioner,

v.                                    Case No. 3:08-cv-83-J-34MCR


SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

Respondents.

_____

**ORDER**

**I. Status**

Petitioner Rodney Manuel Anderson, who is proceeding <u>pro</u> <u>se</u>
and <u>in</u> <u>forma</u> <u>pauperis</u>, initiated this action by filing a Petition
for Writ of Habeas Corpus (Petition) (Doc. #1), Memorandum of Law
(Doc. #2), and exhibits (P. Ex.) (Doc. #3) under 28 U.S.C. § 2254
on January 17, 2008, pursuant to the mailbox rule.  Petitioner
challenges a 1999 state court (Duval County, Florida) judgment of
conviction for robbery with a deadly weapon on the following
twenty-two grounds:  (1) his plea was not knowingly, intelligently
or voluntarily entered due to his mental illness and the use of

_____

[1] The Secretary of the Florida Department of Corrections,
having custody of Petitioner, is the proper Respondent.

psychotropic medication, which resulted in his inability to understand the consequences of his plea; (2) ineffective assistance of counsel for misadvising Petitioner to reject the State's plea offer of eight years; (3) ineffective assistance of counsel for failing to object to the trial judge's vindictive sentence; (4) ineffective assistance of counsel for failing to move to suppress unduly suggestive in-court and out-of-court identifications; (5) ineffective assistance of counsel for failing to impeach Detective Jackson and Ms. Park, the victim; (6) ineffective assistance of counsel for failing to file a motion to suppress the "irrevocable identification" of Petitioner; (7) ineffective assistance of trial counsel for failing to call Jerome Bates as an alibi witness; (8) ineffective assistance of counsel for (a) opening the door to Petitioner's prior convictions and the nature of those convictions, and (b) failing to object to the prosecutor's cross-examination of Petitioner relating to those prior convictions; (9) ineffective assistance of counsel for failing to inform the court, prior to the proceedings, of Petitioner's mental illness and use of psychotropic medication; (10) counsel's use of the victim's deposition at trial violated Petitioner's rights to confrontation and due process of law; (11) the post-conviction court erred in failing to determine whether the amended claims twelve through twenty-two constituted an enlargement of the ten timely-filed claims; (12) the trial court appointed only two mental health experts to evaluate Petitioner's

2

competency; (13) ineffective assistance of counsel for failing to conduct an investigation with respect to the State's admission of two shirts at the trial; (14) the trial court erred in giving a jury instruction on aggravated battery; (15) ineffective assistance of counsel for failing to raise voluntary intoxication as a defense; (16) the trial judge, on cross-examination, erred by commenting on the weighing of evidence, resulting in the denial of a fair trial; (17) ineffective assistance of counsel for failing to object to the mental health expert's evaluation of Petitioner; (18) ineffective assistance of counsel for failing to raise an independent act; (19) ineffective assistance of counsel for filing a motion for continuance, irrespective of Petitioner's right to speedy trial; (20) ineffective assistance of counsel for failing to object to the proffer used at the trial; (21) ineffective assistance of counsel for failing to object to the State's use of Jerome Bates' deposition at trial; and (22) the trial court erred in imposing a departure sentence.

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Amended Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #18).[2]  On January 29, 2008, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #6), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

3

submitted a brief in reply on October 6, 2008.  See Petitioner's Response to Respondents' Answer to Petition for Writ of Habeas Corpus (Reply) (Doc. #22).  This case is ripe for review.

## II. Procedural History

On February 25, 1999, Petitioner was charged in Duval County, Florida, with armed robbery with a deadly weapon (count one), causing bodily injury during the commission of an enumerated felony (count two), and aggravated battery (count three).  Resp. Ex. A at 14-15, Amended Information.  After jury selection, Petitioner proceeded to a jury trial on July 21, 1999, on the armed robbery and aggravated battery counts.  See Resp. Exs. B and C, Transcripts of the Jury Trial Proceedings (Tr.).  At the close of the State's case, the trial judge granted Anderson's motion for judgment of acquittal on the aggravated battery count based on the court's finding that it was a lesser offense of the armed robbery count. Resp. Ex. A at 65, Judgment of Acquittal; Tr. at 206-07.  At the conclusion of the trial, a jury found Petitioner guilty of armed robbery with a deadly weapon.  Resp. Ex. A at 61, Verdict; Tr. at 299.  On July 26, 1999, the trial court adjudicated Petitioner guilty of armed robbery and sentenced him to forty years of imprisonment.  Resp. Ex. A at 73, 97.

On appeal, Petitioner, through counsel, filed an Initial Brief, raising the following claim: the trial court erred in allowing Detective Jackson to testify that it was Anderson on the

surveillance tape.  Resp. Ex. D.  The State filed an Answer Brief, see Resp. Ex. E, and on July 18, 2000, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. Anderson v. State, 766 So.2d 1045 (Fla. 1st DCA 2000); Resp. Ex. F.  The mandate issued on August 3, 2000.  Resp. Ex. G.  Thereafter, on August 14, 2000, Petitioner filed a pro se motion for reduction and modification of his sentence in the trial court pursuant to Florida Rule of Criminal Procedure 3.800(c). Resp. Ex. H.  The court denied the motion on September 6, 2000. Resp. Ex. I.

On September 7, 2000, Petitioner filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. J at 1-18.  Petitioner filed an amended Rule 3.850 motion on December 12, 2000, see id. at 21-70, and a motion to amend and/or supplement on August 10, 2001, see id. at 78-89.  Anxious for a resolution of his claims, on July 14, 2001, Petitioner filed a pro se petition for writ of mandamus in the appellate court, seeking to compel the trial court to rule on his amended Rule 3.850 motion.  Resp. Ex. BB.  However, Petitioner filed a notice of voluntary dismissal of his mandamus petition on September 3, 2001, see Resp. Ex. CC, and on September 11, 2001, the appellate court dismissed the petition for writ of mandamus, see Resp. Ex. DD.

On September 3, 2001, Petitioner also filed his notice of voluntary dismissal of his mandamus petition in the trial court. Resp. Ex. EE.  In the notice, Petitioner stated that he wished to voluntarily dismiss his pending Rule 3.850 motion.  Id. at 2-3. Additionally, on May 1, 2002, Petitioner filed a letter in the trial court, requesting that his pending Rule 3.850 motion be dismissed.  Resp. Ex. FF.  In accordance with Petitioner's request, on May 3, 2002, the trial court granted Petitioner's motion for voluntary dismissal and dismissed his Rule 3.850 motion.  Resp. Ex. GG.

On July 14, 2001, Petitioner filed a pro se petition for writ of habeas corpus in the appellate court, contending that his appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) the trial court erred by permitting a correctional officer to testify regarding an observation he made of Petitioner while incarcerated; (2) the trial court erred in admitting into evidence Jerome Bates' identification card over Petitioner's objection as to relevancy; (3) the trial court erred in denying Petitioner's motion for a mistrial based on the prosecutor's improper comments during closing argument; (4) the jury verdict was contrary to law and was not supported by sufficient evidence; and (5) the jury verdict based on the victim's conflicting identifications of Petitioner, as the robber, was fundamental error.  Resp. Ex. HH.  The appellate court denied the

motion per curiam without issuing a written opinion on August 29, 2001. Anderson v. State, 795 So.2d 60 (Fla. 1st DCA 2001); Resp. Ex. II.

On June 25, 2002, pursuant to the mailbox rule, Petitioner filed a second motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) in the trial court, raising the following grounds: (1) Petitioner's plea was not knowingly, intelligently or voluntarily entered due to his mental illness and the use of psychotropic medication, which resulted in his inability to understand the consequences of his plea; (2) ineffective assistance of counsel for misadvising Petitioner to reject the State's plea offer of eight years; (3) the trial judge participated in the plea bargain process and imposed a vindictive sentence of forty years after the unsuccessful plea negotiations had ended; (4) ineffective assistance of counsel for failing to suppress an unduly suggestive pretrial identification procedure; (5) ineffective assistance of counsel for failing to impeach the victim and Detective Jackson with their prior inconsistent statements; (6) ineffective assistance of counsel for failing file a motion to suppress the "irrevocable identification" of Petitioner; (7) ineffective assistance of trial counsel for failing to call alibi witnesses; (8) ineffective assistance of counsel for opening the door to Petitioner's prior convictions and the nature of those convictions; (9) ineffective assistance of

counsel for failing to inform the court, prior to the proceedings, that Petitioner was on psychotropic medication; and (10) counsel's use of deposition testimony at the trial violated Petitioner's rights to confrontation and due process of law.  Resp. Ex. J at 90-141.

On June 13, 2003, pursuant to the mailbox rule, Petitioner filed a _pro se_ supplement to add the following grounds to the Rule 3.850 motion:  the trial court appointed only two mental health experts to evaluate Petitioner's competency (ground eleven), and ineffective assistance of counsel for failing to conduct an investigation with respect to the State's admission of two shirts at the trial (ground twelve).  Resp. Ex. K at 142-49.  On February 11, 2004, Petitioner filed another _pro se_ supplement to include additional claims:  the trial court erred in giving a jury instruction on aggravated battery (ground thirteen), and ineffective assistance of counsel for failing to raise voluntary intoxication as a defense (ground fourteen).  _Id_. at 152-66.  On April 27, 2004, _pro se_ Petitioner sought to add the following:  the trial judge, on cross-examination, erred by commenting on the weighing of the evidence, resulting in the denial of a fair trial (ground fifteen), and ineffective assistance of counsel for failing to object to the mental health expert's evaluation of Petitioner (ground sixteen).  _Id_. at 167-82.  On or about August 12, 2004, _pro se_ Petitioner sought to add the following ineffectiveness issues:

8

counsel's failing to raise an independent act (ground seventeen), counsel's filing a motion for continuance irrespective of Petitioner's right to speedy trial (ground eighteen), and counsel's failing to object to the proffer used at the trial (ground nineteen). <u>Id</u>. at 183-200. Then, on September 29, 2004, <u>pro</u> <u>se</u> Petitioner moved to add another ineffectiveness claim: counsel's failing to object to the State's use of the victim's deposition at trial (ground twenty). <u>Id</u>. at 201-04. On December 28, 2004, <u>pro</u> <u>se</u> Petitioner sought to add the final claim: the trial court erred in imposing a departure sentence (ground twenty-one). <u>Id</u>. at 205-09.

On March 7, 2006, the trial court held an evidentiary hearing on the claims raised in Petitioner's June 25, 2002 Rule 3.850 motion. Resp. Ex. L at 48-119, Transcript of the Evidentiary Hearing (EH Tr.).[3]  Petitioner was represented by counsel (John Whited) at the evidentiary hearing. On July 31, 2006, the trial court denied the June 25, 2002 Rule 3.850 motion and denied the "supplemental and/or successive motions filed under Rule 3.850 beginning February 17, 2004, and thereafter, said motions and/or petitions" as untimely. Resp. Ex. K at 216-41.

Petitioner appealed the denial, <u>see</u> Resp. Ex. K at 242, and the parties filed briefs, <u>see</u> Resp. Exs. V; W.  On October 12,

---

[3] In citing to the transcript of the evidentiary hearing, this Court will refer to the page number in the lower right-hand corner of the page since it is more readily visible.

2007, the appellate court affirmed the denial per curiam.  <u>Anderson v. State</u>, 973 So.2d 444 (Fla. 1st DCA 2007); Resp. Ex. X.  The court denied Petitioner's motion for rehearing on January 28, 2008. Resp. Exs. Y; Z.  The mandate was issued on February 13, 2008. Resp. Ex. AA.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 8-9.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V.   Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable.  Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted).  In sum, "a federal habeas court making the 'unreasonable application'

> inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521.  Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[4] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI.  Exhaustion/Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all

---

[4] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

> state court remedies that are available for
> challenging his state conviction.  <u>See</u> 28
> U.S.C. § 2254(b), (c).  To exhaust state
> remedies, the petitioner must "fairly
> present[]" every issue raised in his federal
> petition to the state's highest court, either
> on direct appeal or on collateral review.
> <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109
> S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989)
> (emphasis omitted).  Thus, to properly exhaust
> a claim, "state prisoners must give the state
> courts one full opportunity to resolve any
> constitutional issues by invoking one complete
> round of the State's established appellate
> review process." <u>O'Sullivan v. Boerckel</u>, 526
> U.S. 838, 845, 119 S.Ct. 1728, 1732, 144
> L.Ed.2d 1 (1999).

<u>Maples v. Allen</u>, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam),

<u>petition for cert. filed</u>, 79 U.S.L.W. 3055 (U.S. July 9, 2010) (No.

10-63).

Procedural defaults may be excused under certain

circumstances:  "[n]otwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the

claim if a state habeas petitioner can show either (1) cause for

and actual prejudice from the default; or (2) a fundamental

miscarriage of justice." <u>Id</u>. at 890 (citations omitted).  In order

for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639).  Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so

13

> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied,

528 U.S. 934 (1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result.  The Eleventh Circuit

has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim.  "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." Carrier, 477 U.S. at
> 496, 106 S.Ct. at 2649.[5]  "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. Johnson v. Alabama, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

Id.  "To meet this standard, a petitioner must 'show that it is

more likely than not that no reasonable juror would have convicted

him' of the underlying offense." Johnson v. Alabama, 256 F.3d

1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298,

327 (1995)), cert. denied, 535 U.S. 926 (2002).  Additionally,

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

"'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).  Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  <u>Ward v. Hall</u>, 592 F.3d at 1163 (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933.  And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

16

## VIII. The Evidence Presented at Trial

In denying the Rule 3.850 motion, the state court set forth the evidence presented against Petitioner at the trial:

On December 21, 1998, at approximately 9:00 p.m., a service station at the corner of Emerson Street and Phillips Highway in Jacksonville, Duval County, Florida, was robbed. (T107, 8-21) The robber took the cashier's purse and beat her severely with a metal pipe. Most of the robber's actions were caught on a surveillance videotape. The robber and the victim were the only people in the station at the time of the robbery. The victim identified the Defendant as the robber and testified that he had earlier entered the station about 40 minutes before the robbery and later returned. (T119-120; T123, 20)

The service station was well-lit. (T111, 18) The victim identified the Defendant in court stating she would never forget his face. (T111, 20-21) The day after the robbery she identified the Defendant from a photospread consisting of six African American males. (T180, 16) Her identification was described by the detective, who prepared and conducted the photograph lineup, as "very positive." (T180, 25) After identifying the Defendant in the photospread, she saw the Defendant's picture on television in a news report. (T130, 2)

Detective Jackson, who conducted the police investigation of the robbery, testified at trial that the person seen committing the robbery in the surveillance videotape was, in fact, the Defendant. (T189, 7)

Shortly after the robbery, the Defendant and a companion, Jerome Bates, were detained and/or arrested along side some railroad tracks a little over 1/4 of a mile away from the scene. The Defendant was breathing hard and sweating. (T142, 1) Nearby where the two men were apprehended, the police found some

17

items identified as contents from the victim's
purse.  (T148, 5)

It  was  the  state's  theory  that  the
Defendant  and  Bates  had  switched  shirts
because Bates had on a shirt identical to the
one worn by the robber, however, it was on
backwards.   (T145, 1).   In addition, when
Bates was detained[,] the police seized an
identification card which contained a photo of
Bates wearing a shirt that matched the shirt
worn by the Defendant at the time of the
arrest.  (T176-177)

In closing argument, the State compared
the watch, pants, and tennis shoes worn by the
robber in the surveillance video to the watch,
pants, and tennis shoes worn by the Defendant
at the time of the arrest (T253-254).   The
prosecutor also compared the hat worn by the
perpetrator as seen in the video with a hat
found near where the Defendant and Bates were
arrested.    The  evidence  identifying  the
Defendant as the perpetrator of this offense
was compelling, if not overwhelming.

Resp. Ex. K at 217-18 (footnote omitted).

## IX. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner  claims  that  his  plea  was  not  knowingly,
intelligently or voluntarily entered due to his mental illness and
the use of psychotropic medication, which resulted in his inability
to understand the consequences of his plea.  As acknowledged by the
parties, Petitioner raised this ground in his June 25, 2002 Rule
3.850 motion, as ground one.  Resp. Ex. J at 93-94.

This issue was addressed at the state court evidentiary hearing, at which Janet Johnson[6] and Petitioner testified.[7] At the evidentiary hearing, Petitioner explained that his claim was that his "not guilty plea" was involuntary. EH Tr. at 53. After hearing the testimony of the witnesses, the court clarified, then denied, Petitioner's claim:

> With respect to Ground 1: Defendants' plea was not knowingly, intelligently, or voluntarily entered due to the use of psychotropic medications and his mental illness, thus rendering the defendant unable to understand the consequences of his plea.
>
> Insofar as the record should reflect that the only plea he entered was a not guilty plea.
>
> . . . .
>
> And recognizing that it's not his intent to set aside a not guilty plea, the motion will be denied on that basis.
>
> Actually, I don't understand what he's attempting to accomplish there. But there's been no entry of a plea and I assume that we all can agree upon that.
>
> And even in his motion he alleges that he took his case to trial and all the witnesses have testified there has been a trial.

---

[6] Assistant Public Defender Waffa Jamal Hanania represented Petitioner until the court granted her motion to withdraw on March 26, 1999. Pet. Ex. F; Resp. Ex. L at 8-11; Resp. Ex. P at 17-18. That same day, the court appointed Janet Johnson, a private attorney, to represent Petitioner. Resp. Ex. L at 35.

[7] Petitioner was represented by counsel (John Whited) at the state court evidentiary hearing. <u>See</u> EH Tr. at 49.

Id. at 106.

After the evidentiary hearing, the trial court denied the Rule 3.850 motion with respect to this issue, stating "[i]t is unclear what relief is sought [when] . . . [he] acknowledges that he entered a plea of not guilty and went to trial." Resp. Ex. K at 219.  Upon Petitioner's appeal, see Resp. Ex. V at 19-21, the appellate court affirmed the denial per curiam, see Resp. Ex. X.

As this claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions. Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  The Court must consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  At the evidentiary hearing, Petitioner clarified that he was alleging that his "not guilty plea" was involuntary.  EH Tr. at 53.  There is no factual support for a finding that his "not guilty plea" was involuntary. Attorney Johnson testified that there was nothing about her interaction with Petitioner that concerned her.  Id. at 94.  She stated that Petitioner was lucid, had specific factual recollections, had no difficulty understanding the proceedings and the decisions he faced, and had no problems aiding counsel in his defense.  Id. at 94-95, 97.  Thus, there was no reasonable ground for Johnson to further inquire into Petitioner's competency.[8]

Nevertheless, Johnson requested a competency examination of Petitioner because it was her routine practice in almost all of her felony cases.  Id. at 94; Resp. Ex. L at 15, 20.  Thus, prior to trial, Dr. George M. Joseph, M.D., a psychiatrist, examined Petitioner on May 26, 1999, and found that Petitioner was "mentally competent,"[9] which "confirmed" Johnson's conclusion based on her

---

[8] To the extent that Petitioner alleges ineffective assistance of counsel for failing to apprise the court that Petitioner was on psychotropic medication prior to the trial, this Court will address that claim as part of ground nine.

[9] See Resp. Ex. P at 66-70, Independent Medical Evaluation by Dr. George M. Joseph, M.D. (Dr. Joseph's Report), dated May 26, 1999; Pet. Ex. A.

interactions with him that he was competent to assist in his defense and stand trial. EH Tr. at 93-94. Additionally, after the mental examination, Petitioner signed a "Release," indicating that he had decided to proceed to trial.

> I, RODNEY ANDERSON, after discussion with my attorney, Janet Johnson, have decided to proceed to trial in this matter. I understand that Ms. Johnson has not made any promises or predictions about the outcome of my case and, knowing the risks and consequences, I am still proceeding to trial.
>
> I also understand that my evaluation by Dr. Joseph indicated a possible voluntary intoxication defense. However, it is my choice after discussion with my attorney, not to further explore nor present that defense at trial.

P. Ex. I, Release. In consideration of the foregoing, the Court concludes that Petitioner understood the consequences of proceeding to trial. Thus, ground one is without merit.

### B. Ground Two

Petitioner claims counsel was ineffective for misadvising him to reject the State's plea offer of eight years. Although Waffa Hanania subsequently withdrew from her representation of Petitioner due to a conflict of interest, she did represent him at the time of the State's offer. See Resp. Ex. L at 8-11; Resp. Ex. P at 17, 18. As acknowledged by the parties, Petitioner raised this ground in his June 25, 2002 Rule 3.850 motion, as ground two. Resp. Ex. J at 94-95.

Petitioner testified with respect to this issue at the state court evidentiary hearing,  After the evidentiary hearing, the trial court denied the Rule 3.850 motion with respect to this issue, stating: "[t]he court finds no credible evidence to support this allegation and finds the testimony of Defendant at the 3.850 hearing unworthy of belief."  Resp. Ex. K at 219.  Upon Petitioner's appeal, see Resp. Ex. V at 21-23, the appellate court affirmed the denial per curiam, see Resp. Ex. X.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions.  Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner Anderson is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  The record supports the trial court's findings.

23

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

At the evidentiary hearing, Petitioner testified that counsel "gave [him] the desirability to accept the eight-year plea offer," but that he was hesitant since he had never been faced with such a decision. EH Tr. at 56, 78-79. Furthermore, Petitioner acknowledged that counsel had informed him that rejecting the plea could result in a maximum of a life sentence if the jury found him guilty of the charge. <u>Id</u>. at 58-59, 80. Petitioner testified that counsel did not force him to plead not guilty and proceed to trial; she was just "persistent" in her advice to take a plea. <u>Id</u>. at 56, 78, 81. Moreover, Johnson testified that, when she took over the case, Petitioner expressed to her that he felt like a prison sentence for anything over a couple of years "was a death sentence"

24

since he was HIV positive and "was much sicker looking" as he battled health problems. Id. at 89-90, 95. Johnson noted that the State never made an offer while she represented Petitioner. Resp. Ex. L at 42. Based on the record, attorney Hanania's performance was not deficient since she had informed Petitioner that he faced a maximum sentence of life and advised him of the desirability of the State's eight-year plea offer. Petitioner's ineffectiveness claim is without merit since Petitioner has not shown both deficient performance and the resulting prejudice. Accordingly, ground two is without merit.

## C. Ground Three

Petitioner claims counsel was ineffective for failing to object to the trial judge's vindictive forty-year sentence. Respondents contend that the claim is procedurally barred because it was never presented to the state court.[10]   Response at 15. Petitioner concedes that the claim is procedurally barred and attempts to show cause and prejudice. Reply at 6-8. This Court

---

[10] In the Rule 3.850 motion, Petitioner presented a claim based on these same facts as ground three, but treated it as a basis for finding trial court error: the trial judge participated in the plea bargain process and thereafter imposed a vindictive sentence of forty years after the unsuccessful plea negotiations had ended. Resp. Ex. J at 96-97; EH Tr. at 60-62. In denying the Rule 3.850 motion with respect to that issue, the court stated: "[t]he court finds no evidence that the trial judge participated in negotiations other than to state he would not accept plea negotiations or sentence negotiations; . . . nor was any evidence presented to establish that the sentence imposed was vindictive." Resp. Ex. K at 219.

concludes that Petitioner has procedurally defaulted this claim because he failed to present this specific ineffectiveness claim to the state court.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. As Petitioner did not present this ineffectiveness claim to the state court, he has failed to satisfy his exhaustion obligation. Additionally, the Court finds that it would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim for relief because the ineffective assistance of counsel claim could have and should have been raised in Petitioner's Rule 3.850 motion. Accordingly, the claim has been procedurally defaulted.

Here, Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.[11]

### D. Ground Four

Petitioner also contends counsel was ineffective because she failed to move to suppress unduly suggestive identification

---

[11] It is noteworthy that, at the sentencing hearing, counsel presented mitigating evidence of Anderson's childhood struggles, drug addiction, and physical and mental health problems. Resp. Ex. A at 86-99. Moreover, in addressing the court, Petitioner apologized to the victim (who was present at the hearing, id. at 93), stating: "Well, first of all I want to tell the woman I'm sorry for doing what I did." Id. at 95.

procedures.   Assuming that pro se Petitioner intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted.[12]  Resp. Ex. J at 98-100.

This issue was addressed at the state court evidentiary hearing, at which the trial judge clarified the issue: counsel was ineffective for failing to move to suppress the out-of-court identification.  EH Tr. at 107-09.  After the evidentiary hearing, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> It is assumed that Defendant is alleging that trial counsel's failure to seek suppression of an out-of-court identification made at a photographic line-up where the victim identified the Defendant as the robber amounted to ineffective assistance of counsel. At the 3.850 hearing, no evidence was presented suggesting any impropriety in the victim's identification of the Defendant. Further, the record does not support a basis to suppress the identification.

Resp. Ex. K at 219-20.  Upon Petitioner's appeal, see Resp. Ex. V at 25-38, the appellate court affirmed the denial per curiam, see Resp. Ex. X.

---

[12] To the extent that Petitioner has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred.  Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts. Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Upon review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, this Court similarly finds this claim to be without merit. At the trial, Detective Jackson testified that he went to the victim's home the day after the robbery, showed her a photospread of six photographs, and told her that "[t]he suspect may be here or may not be here. You have no obligation to pick out anyone. If the suspect is there, you need to identify him." Tr. at 180. Jackson explained that the victim "pointed out the individual that committed the robbery and became very hysterical and said, 'That's him.'" Id. He stated that the victim was "very positive" about the identification of Anderson as the robber. Id. He noted that she did not hesitate, and there was "definitely" no doubt in her mind. Id. at 181. Jackson testified that he did not

include Bates' photograph in the photospread because Bates was not similar in appearance due to Bates' smaller size and "softness" in comparison to Anderson.[13]   Id. at 174, 188-89.

The victim testified that she had the opportunity to see the robber's face since the store was "[f]ull of light" that night. Id. at 111.   Several times, she testified:  "I [will] never forget his face."   Id. at 111, 126, 131.   She stated that Detective Jackson, the day after the robbery, showed her the photospread, at which time she picked out Anderson's photograph.   Id. at 125-26. She had no doubts about her identification, stating: "I had a picture in my head, I would never forget his face."   Id. at 126. After identifying Anderson in the photospread, the victim saw Anderson on television.   Id. at 128, 183, 187-88.

As the post-conviction court found, the record does not support a basis to suppress the identification.[14]   At the

---

[13] Detective Jackson described the physical differences between Anderson and Bates:

> Mr. Anderson is a little more muscular and
> larger than Mr. Bates.  Also Bates was a [sic]
> softer, he wasn't quite as muscular as this
> individual and he wasn't quite as heavy.  The
> complexion and sizes were not quite the same
> either.

Tr. at 174.

[14] The factors to be considered in determining whether the identification was reliable are outlined in Neil v. Biggers, 409 U.S. 188, 199 (1972).  They are:  "the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the suspect,

evidentiary hearing, attorney Johnson explained that, rather than move to suppress or object to the victim's identification, "the best argument" is to point out that the victim was confused after a very traumatic experience, and therefore, her identification "is not necessarily reliable."    EH Tr. at 93.    Johnson further testified that "at some point there was blood on [Ms. Park's] face and there was certainly an argument she wasn't in the best condition to make a great ID at that point; that was my argument." Id. at 102.

Counsel's failure to move to suppress the identification was not deficient performance since there was no basis upon which to suppress the identification.  Furthermore, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.    Even without the victim's identification of Anderson as the robber, the other evidence identifying Anderson as the robber was substantial and compelling, if not overwhelming.    Indeed, Petitioner has not shown either deficient performance or any resulting prejudice. Therefore, ground four is without merit.

---

the level of certainty of the identification, and the time between the crime and the identification."   United States v. Beale, 921 F.2d 1412, 1433 (11th Cir. 1991) (citing Neil v. Biggers, 409 U.S. 188, 1999 (1972)), cert. denied, 502 U.S. 829 (1991).

## E. Ground Five

Petitioner claims counsel was ineffective for failing to impeach Detective Jackson and Ms. Park with their prior inconsistent statements. Assuming that _pro se_ Petitioner intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted. Resp. Ex. J at 101-02. This issue was addressed at the state court evidentiary hearing, and after the evidentiary hearing, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> Defendant complains that trial counsel did not impeach the victim in two areas of her testimony. He alleges that the victim was not impeached regarding her failure to remember at deposition whether the robber had a moustache. This is incorrect because the trial record reflects that efforts to impeach on this issue were made by trial counsel. (T132, 12)

> Defendant also contends that the prosecutor misled the victim to state at trial that on the day she identified the Defendant, she never saw him again that day. The Defendant seems to be referring to the line of questioning where the prosecutor asked the victim if she saw him again that day and she responded "no;" then responded "yes" when the prosecutor clarified the question by asking "Did you ever see the Defendant on television?" (T127-128) This did not provide a basis for impeachment.

> Lastly, Defendant contends that Detective Jackson should have been impeached about when the news media published a photo of the Defendant as the person arrested for this crime which was seen by the victim shortly after her identification of the Defendant at

31

> the photographic line-up. Both the victim and
> Detective Jackson testified the Defendant's
> photograph was seen on television by the
> victim after the photo identification. (T128,
> 3) (T183, 16)

Resp. Ex. K at 220-21. Following an appeal by Anderson, Resp. Ex. V at 38-44, the appellate court affirmed the denial per curiam. Resp. Ex. X.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit. As the post-conviction court noted, trial counsel attempted to impeach Ms. Park, on cross-examination, regarding her failure at the deposition to remember whether the robber had a moustache. Tr. at 132-33. Additionally, in pointing out the

"conflicts in testimony" for the jury in closing argument, counsel quoted Ms. Park's prior statement that she had not seen a mustache on the robber. Id. at 267.  With respect to Ms. Park and Detective Jackson's testimony that Anderson's photograph was seen on television by the victim after the photo array identification, see id. at 127-28, 183, such testimony did not provide a basis for impeachment.

At the evidentiary hearing, counsel testified regarding the tactical disadvantage to aggressively impeaching the victim in this case:

> I think I talked to Mr. Anderson about this a lot, that one of the concerns that we would have is that we would look heavy-handed and mean if we beat her up, figuratively, after she had been beaten up in this robbery. And there was no question, because it's on video, that she was beaten up and her blood was pretty readily seen in the area and she was injured in her head.
>
> And she was sympathetic.  She was an immigrant, a Korean woman.  She worked two jobs.  She came across very well.
>
> So I felt that it was to our advantage to sort of embrace the fact that she had been robbed, but simply argue it wasn't Mr. Anderson, and this poor woman, something awful happened, but she was so discombobulated by the shock that she didn't know what happened, but it was certainly a robbery.
>
> . . . .
>
> First of all, again, I'm not sure impeaching her a lot was the best strategy because she really was sympathetic and I tried to handle her with kid gloves. . . .

33

EH Tr. at 92, 99-100.   While acknowledging that there were
inconsistencies in Ms. Park's testimony, counsel explained that the
more convincing argument to the jury was to sympathize with the
traumatized victim, but yet persuade the jury not to convict
Anderson based on the victim's mistaken identification.   <u>Id</u>. at
100.   Counsel stated:

> That was a much stronger attack than
> saying, [d]idn't you say he might have only
> had a moustache?
>
> And the person in the video had a
> moustache.   There was no denying the person
> who attacked her had a moustache.   It wasn't a
> strong point to attack her on.
>
> So there were certain things I did
> impeach her with, but certain things we had to
> let go because we weren't going to make her
> our enemy.   She was -- we empathized with her,
> that was an important point I think to get
> across to the jury, because they were going to
> empathize with her.

<u>Id</u>. at 100-01.

In consideration of counsel's testimony and the other evidence
regarding the robbery, counsel's failure to impeach Detective
Jackson and Ms. Park with their prior inconsistent statements was
not deficient performance.   As reflected by counsel's testimony at
the evidentiary hearing, she believed that the more persuasive
approach was to empathize with the victim, rather than pinpoint any
inconsistencies in the witnesses' testimonies relating to her
identification of Anderson as the robber, and also allow Anderson

to testify relating to the victim's mistaken identity of him as the robber.  Id. at 100 (stating "the point was [Anderson] was able to [testify], I was there that day, and she's so confused from the trauma she must have mistaken the first time she saw him with identifying him in the video"); see Tr. at 218-19 (Anderson's trial testimony that he had frequented the store for several years prior to the robbery and had been in the store earlier that same day). Petitioner has not shown both deficient performance and the resulting prejudice.[15]  Thus, this ineffectiveness claim is without merit.

### F. Ground Six

Petitioner argues that counsel was ineffective for failing to file a motion to suppress the "irrevocable identification" of Petitioner.  Assuming that pro se Petitioner intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted.[16]  Resp. Ex. J at 103-05.  This issue was addressed at the state court evidentiary hearing, and after the evidentiary

---

[15] As noted by the post-conviction court, "[t]he evidence identifying the Defendant as the perpetrator of this offense was compelling, if not overwhelming."  Resp. Ex. K at 218.

[16] To the extent that Petitioner Anderson has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred.  Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

hearing, the trial court denied the Rule 3.850 motion relating to

this issue, stating:

> Under this ground, Defendant complains
> that a picture of Bates [the man apprehended
> with Defendant] was not shown to the victim
> even though he was wearing a shirt "similar"
> to the shirt described by the victim; that the
> victim saw his photograph on the news before
> the out-of-court photo identification, thus
> tainting her identification of him; that
> introducing the shirts worn by Bates and the
> Defendant was prejudicial and should have been
> suppressed; and raises again inadequate
> impeachment of the victim's failure to state
> at deposition that the robber had a moustache.
> Neither the trial record nor the record at the
> 3.850 hearing support the contention by
> Defendant that trial counsel was ineffective.
> No basis for relief exists because a picture
> of Bates was not included in the photospread.
> This is especially true in light of
> Defendant's testimony at the 3.850 hearing
> that Bates could not have committed the
> robbery because he was with Bates when the
> robbery occurred.[17]  Further, Bates did not
> fit the description of the robber. [R. 188, 19
> - 189, 10][18]

> No evidence supports the allegation that
> the victim saw [Defendant's] photo on the news
> before her identification.[19]  Legal grounds
> were not alleged to provide a basis that the
> shirt worn backwards by Bates and introduced
> at trial should have been excluded.  The
> obvious relevance is the similarity of the

---

[17] See Tr. at 227, 234.

[18] See Tr. at 174 (Detective Jackson's testimony that Jerome Bates had different physical characteristics as compared to Anderson), 188-89 (Detective Jackson's testimony that a photograph of Jerome Bates was not included in the photospread because Bates "did not fit" the description of the robber).

[19] See Tr. at 127-28, 183.

> shirt to the shirt depicted in the videotape
> worn by the robber.[20]

Resp. Ex. K at 221-22.  On appeal, Resp. Ex. V at 44, the court affirmed the denial per curiam.  Resp. Ex. X.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts.  Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Upon review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.  Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit.  Petitioner has not shown either deficient performance or resulting prejudice given the overwhelming evidence of guilt.  Thus, this ineffectiveness claim is without merit.

---

[20] <u>See</u> EH Tr. at 95-96; Tr. at 144, 176.

## G. Ground Seven

Petitioner claims counsel was ineffective because she failed to call Jerome Bates as an alibi witness. Respondents assert that this ground is procedurally barred, arguing it was not fairly presented to the post-conviction court "because Petitioner did not claim that his trial counsel was ineffective for failing to call Jerome Bates . . . ." Response at 22-23. In the Rule 3.850 motion, Petitioner claims counsel should have called Eugene McCray and Mrs. Marshall Young who would have testified that the victim knew Anderson as a regular customer and that Anderson knew the victim as "Paula." Resp. Ex. J. at 106-07. At the evidentiary hearing, Petitioner testified that there were three witnesses that counsel should have called: Eugene McCray, Mrs. Marsha Young, and Jerome Bates. EH Tr. at 67-71. Specifically, Petitioner testified that Bates should have been called to testify at the trial and bring his two shirts to the trial, _id_. at 69, and counsel addressed that claim at the evidentiary hearing. _Id_. at 90-91.

Thus, to the extent that Petitioner, at the evidentiary hearing, expanded upon his ineffectiveness claim to include counsel's failure to call Bates at the trial, his ineffectiveness claim here is sufficiently exhausted. Ultimately, the trial court denied the Rule 3.850 motion relating to this issue, stating:

> Defendant alleges that counsel should have called alibi witnesses, but fails to identify any alibi witnesses. It appears that Defendant wanted to call impeachment witnesses

> to impeach the victim's testimony that she did
> not recollect seeing this Defendant before
> that day.  Defendant claims to have witnesses
> that would have supported his contention that
> he was a customer of the Banner Food Store
> where the victim previously worked and also
> had frequented the store where she was
> currently working [R23-24].  Accepting the
> Defendant's evidence as represented, this
> would not have established an alibi and would
> have been of minimal probative value as
> impeachment.  Defendant also claimed to have a
> witness who would testify that he owned a
> shirt exactly like the one worn by the robber.
> Trial counsel made the strategic decision that
> this evidence should not be presented. [R52].

Resp. Ex. K at 222.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions.  Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's

claim is without merit.   Counsel recalled a discussion with Petitioner "where we felt that we wouldn't want to prove that [Petitioner] owned the white T-shirt that was worn in the video, that that would not be to his advantage." EH Tr. at 90.  Counsel opined that calling Bates as a witness would have had an extremely negative impact upon the defense, stating in pertinent part:

> I thought it was like the only break that we had that [Bates] wasn't called. [Bates] said when caught that they swapped shirts right afterwards.  And of course [Bates] was going to deny culpability; he's not going to say that he's the person who did it.
>
> And that was the only argument we had: It had to be one of these two people.  And it's much more advantageous to say it's Mr. Bates and not have Mr. Bates there to defend himself.

Id. at 91, 99 (stating Bates would have said "some very bad things").  Counsel opined that it was the best strategy to convince the jury that Anderson had been in the store that day and therefore the victim's identification was based on the fact that she had seen him earlier that same day.  Id. at 92-93, 99, 100.  Counsel's failing to call Bates was not deficient performance.  Petitioner has not shown either deficient performance or resulting prejudice. Therefore, this ineffectiveness claim is without merit.

## H. Ground Eight

Petitioner claims counsel was ineffective for (a) opening the door to his prior convictions and the nature of those convictions, and (b) failing to object to the prosecutor's cross-examination of

Petitioner relating to those prior convictions.   Assuming that pro se Petitioner intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted with respect to ground 8(a).[21]  Resp. Ex. J at 108-09.   This issue was addressed at the state court evidentiary hearing, and ultimately, the trial court denied the Rule 3.850 motion relating to this issue, stating:

> Defendant    testified    in   his   own defense.[22]  Trial counsel employed a common strategy to identify the nature of the Defendant's two felony convictions[23] during direct  examination.[24]    This  strategy  is designed to avoid a false assumption being made  by  the  jury  that  Defendant's  prior convictions  were  for  similar  crimes  or  more aggravating  crimes.   This  was  a  matter  of strategy  and  not  ineffective  assistance  of counsel. [R50].[25]

---

[21] To the extent that Petitioner Anderson has expanded the ineffectiveness claim to include the new factual allegations in ground 8(b) that were not before the Rule 3.850 court, those claims are procedurally barred.   Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

[22] See Tr. at 217-36 (Petitioner's testimony).

[23] See EH Tr. at 77, 83 (Petitioner's testimony regarding his previous convictions for uttering forged checks).

[24] See Tr. at 226.

[25] See EH Tr. at 97 (Attorney Johnson's testimony relating to her strategy).

Resp. Ex. K at 222-23.  Following an appeal by Johnson, Resp. Ex. V at 52-54, the appellate court affirmed the denial per curiam. Resp. Ex. X.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions.  Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  At the trial, the trial judge informed Anderson: "You certainly have a right to testify but there [are] downsides to [testifying], and that's primarily your past conviction[s] . . . ." Tr. at 211.  Nevertheless, after conferring with counsel, Petitioner decided to testify and affirmed that he understood the disadvantages to his testifying.  Id. at 208-13.

At the evidentiary hearing, counsel explained their agreed-upon strategy of revealing the nature of Anderson's previous felony convictions for nonviolent crimes.

> We did discuss the strategy that it's better that they [(the jurors)] don't guess it was an armed robbery. Since it was just an uttering we had the discussion, let's let them know that, because it makes you sound not like someone who goes around robbing people, which is what most clients say is this isn't really my kind of crime, I do paper, I don't do violent crimes. And that was our strategy and he and I came up with that together.

EH Tr. at 97.

Petitioner has failed to establish that counsel's questions to Anderson about the nature of his prior convictions constituted deficient performance, especially since the record reflects they discussed the strategy and Anderson agreed that it was important that the jury understand he had been convicted of nonviolent crimes. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had not revealed the nature of his prior convictions. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

## I. Ground Nine

Petitioner contends counsel was ineffective because she failed to inform the court, prior to the proceedings, of Petitioner's

mental illness and use of psychotropic medication.  As acknowledged by the parties, Petitioner raised this ground in his June 25, 2002 Rule 3.850 motion, as ground nine.  Resp. Ex. J at 110-11.  This issue was addressed at the state court evidentiary hearing, and after testimony, the trial judge stated:

> I have reviewed Dr. George M. Joseph's report[26] and I believe this is the report that was generated after Ms. Johnson asked for an examination.
>
> . . . .
>
> Dr. Joseph's conclusion is that, referring to Mr. Anderson, this individual clearly suffers from multiple psychiatric disorders including major depression with psychotic features, drug dependency, and a personality disorder.
>
> There is nothing to indicate that he was not able to --
>
> . . . .
>
> communicate with his attorney or that was [sic] he was not competent to assist in his defense.  And the evidence is quite contrary to that suggestion because Ms. Johnson alluded to more than one instance where she communicated with the defendant regarding certain strategies to invoke in the trial.
>
> I don't find any basis that the defendant was not aware of the charges, aware of the circumstances or the range of punishments and find no basis to grant Ground 9.

---

[26] See Resp. Ex. P at 66-70, Dr. Joseph's Report, dated May 26, 1999; Pet. Ex. A.

EH Tr. at 115-16.   Ultimately, the trial court denied the Rule 3.850 motion relating to this issue, stating:

> Defense counsel testified that it was almost a routine practice for her to have her clients examined by an expert to determine their competency. [R47][27] Defendant was examined and determined to be competent. [R47] The fact that Defendant may have been taking medication does not suggest that he was incompetent to proceed.  On the contrary, the Defendant played an active role, including testifying, in his defense at trial.
>
> Defendant asserts that he was "depressed" and "impaired;" that he was on the drug, Siniquan, which made him tired and sleepy. However, trial counsel testified that she had no concerns about Defendant's awareness at the time of trial. [R43, R53][28] The court finds Defendant's testimony on this subject to be unworthy of belief and further finds that Defendant was competent and fully understood matters related to the charges and his defense.  His recollection of details (contained in his numerous motions) conflict with his contention that he was confused.

Resp. Ex. K at 223.  Following an appeal by Anderson, the appellate court affirmed the denial per curiam.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions.  Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  After a thorough review of the record and the

---

[27]  <u>See</u> EH Tr. at 94.

[28]  <u>See</u> EH Tr. 90, 94, 95, 97.

applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit.   After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Anderson.   The Court notes that credibility determinations are questions of fact.   See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).   Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.   See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).   Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

Petitioner has failed to establish that counsel's performance was deficient.   The record reflects that, as a routine practice in almost all of her felony cases, counsel requested a competency examination of Petitioner.   EH Tr. at 94; Resp. Ex. L at 15, 20.

46

Thus, prior to trial, Dr. Joseph examined Anderson and found him to be "mentally competent," thereby confirming counsel's opinion that he was competent to assist her in the defense and stand trial.   EH Tr. at 93-94.   Counsel recalled that Anderson was "lucid" and had no difficulties aiding her in his defense.   Id. at 94, 97.   Thus, counsel's performance of requesting that Anderson be examined, relying on those results which showed his mental competence, and then proceeding to the trial, at which Anderson was able to assist in his defense was within "the wide range of professionally competent assistance."   Strickland, 466 U.S. at 690.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.   Therefore, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

### J. Ground Ten

Petitioner claims counsel's use of the victim's deposition at trial when Petitioner was not present at the taking of the deposition violated Petitioner's rights to confrontation and due process of law.   As acknowledged by the parties, Petitioner raised this ground in his June 25, 2002 Rule 3.850 motion, as ground ten.   Resp. Ex. J at 112-13.   The following colloquy ensued at the state evidentiary hearing with respect to this issue:

> THE COURT: Deposition or motion for discovery and trial which violated defendant's right to confrontation and due process of law.

> To my knowledge, there's no right of a defendant to be at a deposition.  Am I wrong on that?
>
> [PETITIONER'S ATTORNEY]: No.[29]
>
> THE COURT: Constitutional right?
>
> [STATE]: There's no right.
>
> THE COURT: **That would form no basis to grant the motion.**

EH Tr. at 116-17 (emphasis added).  Thereafter, the trial court denied the Rule 3.850 motion relating to this issue.  Resp. Ex. K at 223.  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts.  As there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were they based on an unreasonable determination of the facts in light of the

---

[29] Respondents contend that the claim is procedurally barred since counsel "essentially waived" the claim.  Response at 26-27. Nevertheless, this Court finds that the claim was sufficiently exhausted because it appears that the trial judge denied the claim on the merits.

evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. See Wright v. State, 646 So.2d 811, 813 (Fla. 1st DCA 1994); Fla. R. Crim. P. 3.220(h)(7) (stating a defendant shall not be physically present at a deposition except on stipulation of the parties or at the discretion of the court upon a showing a good cause). Moreover, the victim testified at the trial, and counsel effectively cross-examined her.

### K. Ground Eleven

Petitioner claims that the state post-conviction court erred in failing to determine whether the amended claims (twelve through twenty-two) constituted an enlargement of the ten timely-filed claims. Respondents contend that federal habeas review is available to challenge a prisoner's confinement, not to challenge the process afforded to the prisoner during his state post-conviction proceedings. Response at 27 (citations omitted). This Court agrees.

The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted), cert. denied, 130 S.Ct. 500 (2009). "The reasoning behind this well-established principle is

49

straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment- i.e., the conviction itself- and thus habeas relief is not an appropriate remedy." Id. (citations omitted).  Thus, Petitioner is not entitled to relief on the basis of this claim.

### L. Grounds Twelve through Twenty-Two

As to the remaining grounds, Petitioner claims the trial court appointed only two mental health experts to evaluate Petitioner's competency (ground twelve); counsel was ineffective for failing to conduct an investigation with respect to the State's admission of two shirts at the trial (ground thirteen); the trial court erred in giving a jury instruction on aggravated battery (ground fourteen); counsel was ineffective for failing to raise voluntary intoxication as a defense (ground fifteen); the trial judge, on cross-examination, erred by commenting on the weighing of evidence, resulting in the denial of a fair trial (ground sixteen); counsel was ineffective for: failing to object to the mental health expert's evaluation of Petitioner (ground seventeen), failing to raise an independent act (ground eighteen), filing a motion for continuance irrespective of Petitioner's right to speedy trial (ground nineteen), failing to object to the proffer used at the trial (ground twenty), and failing to object to the State's use of Bates' deposition at trial (ground twenty-one); and the trial court erred in imposing a departure sentence (ground twenty-two).

Petitioner raised the above-stated grounds in supplemental motions.  See Resp. Ex. K at 142-49, 152-66, 167-82, 183-200, 201-04, 205-09.  The State responded that "Defendant's 3.850 was filed just within the two (2) year time limit for filing of a 3.850 motion which would have expired July 18, 2002 [and] [a]ll successive motions and amendments were filed after July 18, 2002." Id. at 210 n.1.  At that time, the State failed to account for the appellate court's issuance of the mandate in calculating the running of the two-year time period.  On July 31, 2006, the trial court denied the June 25, 2002 Rule 3.850 motion (including grounds one through ten) and denied the "supplemental and/or successive motions filed under Rule 3.850 beginning February 17, 2004, and thereafter, said motions and/or petitions" as untimely.  Resp. Ex. K at 216-41.  Upon an appeal and briefing, see Resp. Exs. V; W, the appellate court affirmed the denial per curiam.  Resp. Ex. X.

Respondents contend that, since grounds twelve through twenty-two were included in those supplemental post conviction motions, the claims are procedurally barred since they were raised in a procedurally incorrect manner in state court.  This Court agrees. The post conviction court properly applied a regularly followed procedural default principle and found that the supplemental post conviction motions were untimely.[30]  Petitioner's contention that

---

[30] A Rule 3.850 motion must be filed within two years after the defendant's judgment and sentence become final.  See Fla. R. Crim. P. 3.850(b).  Petitioner's judgment and sentence became final on

the trial court should have considered his supplemental claims an enlargement of his timely filed claims, see Reply at 32 (citing Lanier v. State, 826 So.2d 460 (Fla. 1st DCA 2002)), is unconvincing.  In reviewing his supplemental claims, it appears Petitioner intended to raise new claims, not merely expand upon the timely filed claims.  See Lanier, 826 So.2d at 461-62.[31]

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court need not address the merits of grounds twelve through twenty-two.

## X. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d

---

Thursday, August 3, 2000, when the appellate court issued its mandate on direct appeal.  See Knowles v. State, 41 So.3d 332, 333 (Fla. 1st DCA 2010) ("The two-year time period begins to run when appellate proceedings have concluded and the court issues a mandate, a fact clearly stated in the Rule.").  Therefore, the two-year time period in which to timely file a Rule 3.850 motion expired two years later on Monday, August 5, 2002.  See Response at 16, 28.

[31] Lanier v. State, 826 So.2d 460, 461 (Fla. 1st DCA 2002) ("A trial court may properly deny an amended Rule 3.850 motion as untimely when it raises new claims and is filed outside of the two-year time period" however, the two-year time period "does not preclude the enlargement of issues which were raised in a timely filed motion for postconviction relief.").

1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  The remainder of Petitioner's claims are either procedurally barred or without merit.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

**XI. Certificate of Appealability
Pursuant to 28 U.S.C. § 2253(c)(1)**

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See</u>

53

Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of

March, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 3/1
c:
Rodney Manuel Anderson
Ass't Attorney General (Edwards)